2:25-ms-00006

**ANDERSEN BEEDE WEISENMILLER**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
Email: *ryan@abwfirm.com*
Jeff Garrett, Esq.
Nevada Bar No. 15917
Email: jeff@abwfirm.com
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120
Phone: 702-522-1992
Fax: 702-825-2824

*Counsel for Peak Performance Restructuring Services, LLC, as Receiver*

ANDERSEN BEEDE WEISENMILLER ABW

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Phong Thanh Huynh,<br><br>Plaintiff,<br>v.<br><br>Alissa Chiaravanond, an individual resident of Arizona, Pacific Shangrila LLC, a Nevada limited liability company, Cathedral Shangrila LLC, a Nevada limited liability company, Nido di Stelle LLC, a Nevada limited liability company, ILU LLC, an Arizona limited liability company,<br><br>Defendants. | United States District Court<br>District of Arizona<br>Case No.: CV-23-08622-PCT-JJT<br><br>Misc. Case No.: |

**NOTICE OF FILING OF COMPLAINT AND ORDER APPOINTING RECEIVER PURSUANT TO 28 U.S.C. § 754**

PLEASE TAKE NOTICE that on January 17, 2025, Peak Performance Restructuring, LLC, by and through its principal Adam B. Nach, was appointed as receiver in that certain action pending in the United States District Court, District of Arizona, pending as Case No. CV-23-08622-PCT-JJT, to serve as the duly appointed receiver for the following companies: (i) Pacific Shangrila LLC; and (ii) ILU LLC.

PLEASE TAKE FURTHER NOTICE that pursuant to 28 U.S.C. § 754, attached hereto as **Exhibit 1** is a true and correct copy of the complaint on file in such as action as Dkt. No. 1; and attached hereto as **Exhibit 2** is a true and correct copy of the order appointing receiver entered in such action at Dkt. No. 70.

Dated this 28th day of January 2025.

Respectfully submitted by:

**ANDERSEN BEEDE WEISENMILLER**

By: /s/ Ryan A. Andersen
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
Jeff Garrett, Esq.
Nevada Bar No. 15917
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120

*Counsel for Peak Performance Restructuring Services, LLC, as Receiver*

ABW ANDERSEN BEEDE WEISENMILLER

# EXHIBIT 1

EXHIBIT 1

EXHIBIT 1

Devin Sreecharana, Esq. (029057)
MAY, POTENZA, BARAN & GILLESPIE, P.C.
1850 N. Central Ave., Suite 1600
Phoenix, Arizona 85021
Telephone: (602) 252-1900
Facsimile: (602) 252-1114
Email: devin@maypotenza.com

Moshe Y. Admon, Esq. (*Admission Pending)*
State Bar No. 034169
Admon Law Firm, PLLC
300 Lenora St., #4008
Seattle, Washington 98121
Telephone: (206) 739-8383
Email: jeff@admonlaw.com

*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Phong Thanh Huynh,<br><br>Plaintiff,<br>v.<br><br>Alissa Chiaravanond, an individual resident of Arizona, Pacific Shangrila LLC, a Nevada limited liability company, Cathedral Shangrila LLC, a Nevada limited liability company, Nido di Stelle LLC, a Nevada limited liability company, ILU LLC, an Arizona limited liability company,<br><br>Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>(Jury Trial Demanded) |

COMES NOW the Plaintiff herein, Phong Thanh Huynh ("Phong"), by and through his undersigned attorneys of record, Moshe Admon of Admon Law Firm, PLLC, and for cause of action against Defendant named herein, allege and asserts the following:

**PARTIES**

1. Phong is, and at times relevant hereto was, a Canadian citizen and resident of Singapore. Phong is not a minor or otherwise incapable of bringing this action.

2. On information and belief, Defendant Alissa Chiaravanond ("Chiaravanond") is a resident of Yavapai County, Arizona.

3. On information and belief, Pacific Shangrila LLC ("Pacific") is a single-member limited liability company incorporated in the State of Nevada, owned by Defendant Chiaravanond, with its nerve center[1] in Arizona.

4. Pacific's sole purpose is to hold residential property located at 20990 Las Flores Mesa Dr., Malibu, CA 90625 (also referred to as "Malibu House").

5. On information and belief, Cathedral Shangrila LLC ("Cathedral") is a single-member limited liability company incorporated in the State of Nevada, owned by Defendant Chiaravanond, with its principal place of business in Arizona.

6. Cathedral's sole purpose is to hold residential property located at 288 Back O Beyond Circle, Sedona, Arizona 86336 ("Sedona House 1").

7. On information and belief, Nido di Stelle LLC ("Nido") is a single-member limited liability company incorporated in the State of Nevada, owned by Defendant Chiaravanond, with its principal place of business in Arizona.

8. Nido's sole purpose is to hold residential property located at 95 Cross Creek Circle, Sedona, AZ 86336 ("Sedona House 2") and 95 Ravens Call Place, Sedona, AZ 86336 ("Sedona Land," together with the Malibu House, Malibu Land, Sedona House 1, and Sedona House 2 collectively referred to as the "Investment Properties").

9. On information and belief, ILU LLC ("ILU," together with Pacific, Cathedral, and Nido collectively referred to as the "Corporate Defendants") is a single-member limited liability company incorporated in the state of Arizona, owned by Defendant Chiaravanond.

10. ILU's purpose is to hold land located at 20966 Las Flores Mesa Dr., Malibu, CA 90625 (also referred to as "Malibu Land"), and to manage all the Investment Properties owned by Corporate Defendants.

---

[1] *See Hertz Corp. v. Friend*, 559 U.S. 77, 93, 130 S. Ct. 1181, 1193, 175 L. Ed. 2d 1029 (2010).

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity between Phong and the Defendants and the amount in controversy exceed $75,000.00, exclusive of interest and costs.

12. This Court also has supplemental jurisdiction over Phong's state and common law claims pursuant to 28 U.S.C. § 1367.

13. This Court has personal jurisdiction over Defendant Chiaravanond because, at all times relevant hereto, Defendant, individually and through each Corporate Defendant, caused the events alleged herein to occur and have their primary effect in the State of Arizona.

14. This Court has personal jurisdiction over Defendant Pacific because: Pacific's nerve center[2] is in Yavapai County, Arizona; its sole member and manager, Defendant Chiaravanond, operated it from Yavapai County, Arizona; and, it was acting in concert with the other Defendants, which it knew were operating from and/or held property in Arizona, as part of the Defendants' fraudulent scheme alleged herein.

15. This Court has personal jurisdiction over Defendant Cathedral because Cathedral's principal place of business is Yavapai County, Arizona, where it owns residential property.

16. This Court has personal jurisdiction over Defendant Nido because Nido's principal place of business is Yavapai County, Arizona, where it owns residential property and land.

17. This Court has personal jurisdiction over Defendant ILU because it is an Arizona company with its principal place of business in Yavapai County, Arizona, where it manages the Investment Properties.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants reside and/or have their principal place of business in this judicial district, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions

---

[2] *Id.*

giving rise to the claims at issue occurred in this judicial district.

## GENERAL ALLEGATIONS

19. Plaintiff Phong is a 57-year-old man, a citizen of Canada, and a resident of Singapore.

20. Defendant Chiaravanond is a 48-year-old woman, a dual citizen of the United States and Thailand, and a resident of Arizona.

21. On or about 2014, Phong met Defendant Chiaravanond through work.

22. From the parties' first meeting, Defendant Chiaravanond represented to Phong that she was a seasoned real estate investor with a lengthy track record of profitable investments, including residential flips in California.

23. Defendant Chiaravanond's LinkedIn profile showed (and still shows) her experience to be rife with real estate development experience.

24. On or about September 2018, the parties started dating.

25. On or about early 2019, Defendant Chiaravanond convinced Phong to look for investment properties in Thailand. Because only Thai nationals can own freehold or landed property in Thailand, Defendant Chiaravanond offered to hold Phong's investment in her name and hold rental profits for him through a property management company which she managed and controlled.

26. When the COVID-19 Pandemic began, Asia was completely locked down, and travel to Thailand was impossible.

27. Defendant Chiaravanond suggested that Phong invest in the U.S. instead of Thailand.

28. Defendant Chiaravanond represented to Phong that she was very familiar with the U.S. residential real estate market, and that she had experience identifying highly lucrative U.S.-based residential investments.

29. Defendant Chiaravanond further represented to Phong that because she was a U.S. citizen, it would be much easier for Phong to purchase U.S. properties through limited liability companies ("<u>LLCs</u>"), which Defendant Chiaravanond would manage exclusively for

Phong's benefit.

30. Defendant Chiaravanond represented to Phong that she wanted to help him create a retirement nest egg portfolio of profitable residential real estate, so that if the two eventually married, those properties would provide their collective financial security. Because of Phong's relationship with Defendant Chiaravanond and touted real estate investment experience, he trusted and relied on her representations.

31. Defendant Chiaravanond provided Phong with an investment plan (the "Defalcation and Embezzlement Plan").

32. Defendant Chiaravanond's Defalcation and Embezzlement Plan focused on inducing Phong to purchase properties in Sedona, Arizona, and Malibu, California.

33. Defendant's Defalcation and Embezzlement Plan represented that Defendants Pacific, Cathedral, Nido, and ILU were to be wholly owned by the Trilliant Group, Ltd., a BVI company set up in Singapore ("Trilliant Group"), which would be owned by an offshore Trust/LLC solely owned and controlled by Phong.

34. Through the Defalcation and Embezzlement Plan, Defendant Chiaravanond induced Phong to hold the Investment Properties he purchased in four LLCs: (1) Defendant Pacific would hold the Malibu House, (2) Defendant ILU would hold the Malibu Land, (3) Cathedral would hold the Sedona House 1, and (4) Nido would hold Sedona House 2 and the Sedona Land.

35. The Defalcation and Embezzlement Plan Defendant Chiaravanond presented to Phong also called for using ILU to operate/manage the Investment Properties' expenses, including renovations and day-to-day expenses such as landscaping, and the Investment Properties' rental revenues.

36. ILU is an Arizona limited liability company, and Defendant is its sole member and manager.

37. Through the Defalcation and Embezzlement Plan, Defendant Chiaravanond represented that the Investment Properties would be rented and generate cash flow for Phong's retirement.

38. Unbeknownst to Phong, Defendant Chiaravanond's Defalcation and Embezzlement Plan was a scheme devised to defraud Phong.

39. Based on Defendant Chiaravanond's representations and Phong's trust in Defendant Chiaravanond, on or about January 2020, Phong transferred $3,500,000 from his personal bank account solely owned by him to the Trilliant Group for the purpose of investing consistent with Defendant Chiaravanond's Defalcation and Embezzlement Plan.

40. On or about May 2020, Phong and Defendant Chiaravanond flew to the U.S. and began looking for investment properties in the subsequent months.

**Transfer from Phong's Personal Account to Defendant Chiaravanond Between August 2020 and October 2021**

41. From August 2020 to October 2021, Phong transferred $1,320,000 from his personal account solely owned by him to Defendant Chiaravanond's personal bank account in the U.S. to further Defendant Chiaravanond's Defalcation and Embezzlement, which, at the time, Phong believed to be genuine.

42. Based on Defendant Chiaravanond's representations, Phong transferred $1,320,000 with the intent to purchase investment properties, renovate them, and pay all necessary taxes. The transfers are enumerated below:

| Date | Amount |
|---|---|
| August 27, 2020 | $ 90,000 |
| March 10, 2021 | $200,000 |
| May 28, 2021 | $750,000 |
| October 1, 2021 | $280,000 |
| **Total:** | **$1,320,000** |

**Transfer of Phong's Money from Trilliant Group's Account to Defendant Cathedral**

43. On information and belief, Defendant Chiaravanond formed Defendant Cathedral, a Nevada Limited Liability Company, on February 2, 2021.

44. Defendant Chiaravanond is the sole member of Defendant Cathedral and its manager.

45. Despite her contrary representations to Phong, Defendant Chiaravanond solely manages and controls Trilliant Group.

46. On February 11, 2021, Trilliant Group transferred Phong's $3,500,000 to Defendant Cathedral.

47. On February 19, 2021, Defendant Chiaravanond, through Defendant Cathedral, purchased Sedona House 1 for $3,325,000.

48. On information and belief, Sedona House 1 is titled in Defendant Cathedral's name.

49. To date, Defendant Chiaravanond has not amended Defendant Cathedral's Articles of Organization to include Trilliant Group or Phong as Defendant Cathedral's sole member, consistent with her representation to Phong on which he relied. Instead, she unilaterally identified herself as Defendant Cathedral's sole member so that she can unlawfully control Sedona House 1 and solely benefit from any related rental income, appreciation, and/or sale proceeds.

**Transfer from Phong's Personal Account to Defendant**

50. On information and belief, Defendant Chiaravanond formed Defendant Nido, a Nevada Limited Liability Company, on July 15, 2021.

51. Defendant Chiaravanond is the sole member of Defendant Nido and its manager.

52. On June 25 and July 8, 2021, Phong transferred a total of $4,900,000 from his personal bank account solely owned by him to Pioneer Title Agency in Sedona, Arizona, to effectuate the purchase of Sedona House 2, for a purchase price of $5,200,000.

53. On information and belief, Defendant Chiaravanond used $300,000 from the $950,000 in cash Phong transferred to her personal bank account on March 10 and May 28, 2021, to pay the remaining balance of Sedona House 2's purchase price.

54. On information and belief, the Sedona House 2 is titled in Defendant Nido's name.

55. To date, Defendant Chiaravanond has not amended Defendant Nido's Articles of Organization to include Trilliant Group or Phong as Defendant Nido's sole member.

56. Instead, Defendant Chiaravanond has unilaterally identified herself as Defendant Nido's sole member so that she can control Sedona House 2 and solely benefit from any related rental income, appreciation, and/or sale proceeds.

57. On August 14, 2021, Phong transferred a total of $525,000 from his personal bank account solely owned by him to Pioneer Title Agency in Sedona, Arizona, to effectuate the purchase of the Sedona Land for a purchase price of $525,000.

58. On information and belief, the Sedona Land is titled in Defendant Nido's name.

59. To date, Defendant Chiaravanond has not amended Defendant Nido's Articles of Organization to include Trilliant Group or Phong as Defendant Nido's sole member.

60. Defendant Chiaravanond has unilaterally identified herself as Defendant Nido's sole member so that she can control Sedona House 2 and Sedona Land and solely benefit from any related rental income, appreciation, and/or sale proceeds.

**Transfer from Phong's Personal Account to Defendant Pacific**

61. On information and belief, Defendant Chiaravanond formed Defendant Pacific, a Nevada Limited Liability Company, on January 22, 2021.

62. Defendant Chiaravanond is the sole member of Pacific and its manager.

63. On February 15, 2021, Phong transferred $4,250,000 from his personal bank account solely owned by him to Defendant Pacific.

64. On February 18, 2021, Defendant Pacific purchased the Malibu House for $4,205,500.

65. On information and belief, the Malibu House is titled in Defendant Pacific's name.

66. To date, Defendant Chiaravanond has not amended Defendant Pacific's Articles of Organization to include Trilliant Group or Phong as Defendant Pacific's sole member.

67. Instead, Defendant Chiaravanond has unilaterally identified herself as Defendant Pacific's sole member so that she can control the Malibu House and solely benefit

from any related rental income, appreciation, and/or sale proceeds.

**ILU's Purchase of Malibu Land**

68. On information and belief, Defendant Chiaravanond formed Defendant ILU, an Arizona Limited Liability Company, on January 21, 2021.

69. Defendant Chiaravanond is the sole member of ILU and its manager.

70. On information and belief, on June 21, 2021, Defendant ILU used funds from the $950,000 in cash Phong transferred to her personal bank account on March 10 and May 28, 2021, to purchase the Malibu Land for $227,500.

71. The Malibu Land is adjacent to the Malibu House.

72. On information and belief, the Malibu Land is titled in Defendant ILU's name.

73. To date, Defendant Chiaravanond has not amended Defendant ILU's Articles of Organization to include Trilliant Group or Phong as Defendant ILU's sole member.

74. Defendant Chiaravanond has unilaterally identified herself as Defendant ILU's sole member so that she can control the Malibu Land and solely benefit from any related rental income, appreciation, and/or sale proceeds.

**Transfer from Phong's Personal Account to Defendant Between September 2022 and August 2023**

75. On May 1, 2022, Phong and Defendant Chiaravanond married in Vancouver, Canada.

76. Based on Defendant Chiaravanond's representations, Phong made multiple transfers totaling $950,000 from his personal account solely owned by him to Defendant Chiaravanond's personal bank account in the U.S. between September 2022 and August 2023.

77. Phong transferred the $950,000 in reliance on Defendant Chiaravanond's representation that those funds would be used to renovate the Investment Properties and to pay all necessary maintenance, taxes, and the like. The transfers are enumerated below:

| Date | Amount |
|---|---|
| September 30, 2022 | $250,000 |
| June 13, 2023 | $200,000 |
| June 20, 2023 | $300,000 |

| | |
|---|---|
| August 25, 2023 | <u>$200,000</u> |
| **Total:** | **$950,000** |

78. Due to Defendant Chiaravanond's representations to Phong, he transferred the following sums to her for the purpose of purchasing and renovating the Investment Properties during their personal relationship:

| | |
|---|---|
| Cash before Marriage: | $1,320,000 |
| Cash after Marriage: | $ 950,000 |
| Cathedral Shangrila: | $3,500,000 |
| Nido di Stelle: | $5,425,000 |
| Pacific Shangrila: | $4,250,000 |
| **Total:** | **$15,445,000** |

79. Phong's $15,445,000 transfers were financed by a loan carrying 8% annual interest. - Phong was required to secure this loan with his personal property, in which Defendant Chiaravanond has no interest.

80. Upon information and belief, during 2022 and 2023, Defendant Chiaravanond leased at least Sedona House 1 and did not provide Phong with any of the resulting rental income.

81. On August 31, 2023—one year after marriage, and six days after Phong's last August 25, 2023, transfer of $200,000 to Defendant—Phong received a letter from Defendant Chiaravanond's attorney in Singapore seeking to nullify the marriage.

82. Moreover, Defendant Chiaravanond's letter and a subsequent letter demanded that Phong pay her, *inter alia,* long-term maintenance or a lump-sum in lieu of long-term maintenance, provide Defendant immediate and exclusive possession of Phong's Singapore home, provide Defendant a portion of the equity in Phong's Singapore home, and pay Defendant $500,000 by September 2023 to finance her living expenses.

83. Notably, Defendant Chiaravanond's letters were silent regarding the $15,445,000 Phong transferred to Defendant Chiaravanond to purchase the Investment Properties.

84. On October 9, 2023, Defendant Chiaravanond served Phong a Writ of Nullity,

Statement of Claim for Nullity, and Statement of Particulars (the "Petition to Nullify the Marriage"), filed in the Family Justice Courts of the Republic of Singapore.

85. Nowhere in the Petition to Nullify the Marriage is there any statement regarding the Investment Properties and $2,270,000 in cash Phong provided Defendant Chiaravanond to renovate and maintain the Investment Properties (the "Property Maintenance Investment").

86. Defendant intentionally omitted the Investment Properties and Property Maintenance Investment from the Petition to Nullity the Marriage because, on information and belief, the Investment Properties are registered solely to Defendant Chiaravanond, the rent from the Investment Properties and Property Maintenance Investment are in her personal bank account(s), and the Singaporean Family Justice Court has no jurisdiction over them—meaning, Defendant Chiaravanond is wrongfully trying to keep the Investment Properties, related rental income, and Property Maintenance Investment.

87. Defendant Chiaravanond devised the Defalcation and Embezzlement Plan to defraud Phong of all the Investment Properties and Property Maintenance Investment Phong transferred to Defendant Chiaravanond.

**Defendant Chiaravanond is Attempting to Sell the Malibu House and Land**

88. On October 9, 2023, Defendant Chiaravanond, through Defendant Pacific, listed the Malibu House and Malibu Land for sale for $7,809,000 without informing Phong or seeking his consent.

89. Phong objects to the sale of the Malibu House and Malibu Land.

90. Based on Defendant Chiaravanond's legal demands in Singapore and action to list the Malibu House and Malibu Land, it is apparent she intends to retain or convert all the Investment Properties and Property Maintenance Investment for her sole benefit and to Phong's exclusion, despite her contrary representations to Phong.

91. As a result of Defendant Chiaravanond's actions or omissions, Phong has suffered direct and consequential damages of no less than $15,455,000 plus 8% annual interest.

**COUNT I**
**Breach of the Implied Covenant of Good Faith and Fair Dealing (Tort)**
**(Defendant Chiaravanond)**

92. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

93. Because the parties were (a) in a personal, intimate relationship when Phong transferred $14,495,000 to Defendant Chiaravanond's dominion and control, and (b) were married when Phong transferred $950,000 to Defendant Chiaravanond's dominion and control, Defendant Chiaravanond had a special and confidential relationship with Phong during the Defalcation and Embezzlement Plan.

94. A party may bring an action in tort claiming damages for breach of the implied covenant of good faith, where there is a special relationship between the parties arising from a fiduciary responsibility.

95. Under the implied covenant of good faith and fair dealing, Defendant Chiaravanond was obligated to act in Phong's best interest and not prevent Phong from receiving the benefits of his investments.

96. Defendant Chiaravanond acted to deny Phong the benefits of his investments by refusing to return the Investment Properties and the $2,270,000 Phong transferred to her.

97. Defendant Chiaravanond's actions, as described herein, were in bad faith and constitute breaches of the implied covenant of good faith and fair dealing.

98. As a direct and proximate result of Defendant Chiaravanond's breach of the implied covenant of good faith and fair dealing, Phong has been damaged and is entitled to recover his damages incurred in a specific amount to be proven at trial, not less than $15,455,000 plus 8% annual interest, or a return of the Investment Properties and the $2,270,000 cash plus 8% annual interest.

99. Defendant Chiaravanond's actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter Defendant Chiaravanond from engaging in conduct like that described herein.

100. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

**COUNT II**
**Unjust Enrichment**
**(All Defendants)**

101. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

102. Phong provided 100% of the funding to purchase, renovate, and upkeep the Investment Properties, not less than the principal amount of $15,455,000.

103. Due to Defendant Chiaravanond's Defalcation and Embezzlement Plan, Phong transferred $13,175,000 of his personal funds to purchase the Investment Properties titled in the names of Defendants Pacific, Cathedral, and Nido, which are LLCs solely owned by Defendant Chiaravanond and over which she exercises exclusive dominion and control.

104. Due to Defendant Chiaravanond's Defalcation and Embezzlement Plan, Phong transferred $2,270,000 in cash to Defendant Chiaravanond's bank account, over which she exercises exclusive dominion and control.

105. Defendant Chiaravanond recently filed a Petition to Nullify the Marriage and intends to keep all of the Properties purchased with Phong's money and on Phong's behalf and all the cash Phong transferred to Defendant Chiaravanond for repair and maintenance of the Properties.

106. Through Defendant Chiaravanond's Defalcation and Embezzlement Plan, each Defendant has been unjustly enriched by their wrongful withholding of the Investment Properties and cash.

107. Phong has been impoverished because of Defendants' unlawful and unauthorized withholding of the Investment Properties and Property Maintenance Investment

from him.

108. There is no justification for Defendants' unjust enrichment and Phong's resulting impoverishment.

109. As a direct and proximate result of Defendants' unjust enrichment, Phong has suffered damages in an amount to be determined at trial.

110. To the extent Phong does not have a contractual remedy, unjust enrichment is plead in the alternative because may not have an adequate legal remedy.

111. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

**COUNT III**
**Money Had and Received**
**(All Defendants)**

112. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

113. As part of Defendant Chiaravanond's Defalcation and Embezzlement Plan, Defendants wrongfully and improperly took and possesses money belonging to Phong in the principal amount of $15,455,000.

114. Through their improper taking and possession of Phone's money, Defendants appreciated a benefit.

115. Defendants cannot in good conscience and equity retain the Phong's money, which should be returned to Phong.

116. Phong is entitled to an award of punitive damages to punish Defendants for their conscious and intentional conduct in willfully refusing to return the money had and received and/or to deter Defendants and others from similar misconduct in the future.

117. In order to prevent injustice, Phong requests the Court pierce the corporate veil of Defendant entities named herein and hold Defendant Chiaravanond personally liable for the acts and omissions of Defendant entities because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of Phong's money.

**COUNT IV**
**Breach of Fiduciary Duty**
**(Defendant Chiaravanond)**

118. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

119. Because the parties were (a) in a personal, intimate relationship when Phong transferred of $14,495,000 to Defendant Chiaravanond's dominion and control, and (b) were married when Phong transferred $950,000 to Defendant Chiaravanond's dominion and control, Defendant Chiaravanond had a special and confidential relationship with Phong during the Defalcation and Embezzlement.

120. Defendant Chiaravanond owed Phong fiduciary and other duties and obligations under the Investment Plan and Arizona law, including but not limited to duties of loyalty, good faith, disclosure, and due care.

121. Defendant Chiaravanond breached her fiduciary and other duties to Phong through her acts and omissions as stated herein, including but not limited to her acts and omissions with respect to the Defalcation and Embezzlement, including the following:

a. Fraud;

b. Embezzlement;

c. Self-Dealing;

d. Listing the Malibu House and Malibu Land without Phong's approval;

e. Concealing the listing of the Malibu House and Malibu Land from Phong.

122. Defendant Chiaravanond acted in bad faith, acted contrary to the best interest of Phong, and acted to further her personal interests to the detriment and at the expense of Phong.

123. In her capacity as an intimate partner and later wife of Phong, Defendant Chiaravanond acted without the care that an ordinary prudent person in a similar position would exercise under similar circumstances.

124. In her capacity as an intimate partner and later wife of Phong, Defendant Chiaravanond acted with gross negligence, and in willful and wanton disregard of the Investment Plan, Phong's best interests, and Arizona's criminal statutes.

125. Phong has suffered significant damage as the direct, proximate, and reasonably foreseeable result of Defendant Chiaravanond's breaches of her fiduciary and other duties to Phong.

126. Defendant Chiaravanond's actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter Defendant Chiaravanond from engaging in conduct like that described herein.

127. Phong is entitled to the imposition of a constructive trust.

128. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

## COUNT V
## Constructive Fraud
## (Defendant Chiaravanond)

129. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

130. Defendant Chiaravanond had a fiduciary or confidential relationship with

Phong.

131. Defendant Chiaravanond intentionally and/or recklessly made material representations to Phong, over several months, that if Phong transferred funds to Defendant Chiaravanond to purchase, renovate, and maintain Investment Properties in the U.S., Defendant Chiaravanond would help create a retirement nest egg of profit-generating properties to benefit Phong.

132. At the time that Defendant Chiaravanond engaged in the material representations and omissions, she knew that such representations were false, such omissions were material, and she had no intention of fulfilling her obligations thereunder, but nevertheless knowingly and intentionally engaged in such wrongful conduct in order to cause Phong to rely thereon.

133. Defendant Chiaravanond breached her representations and, after one year of marriage to Phong, filed a Petition to Nullify the Marriage, with the intent to keep all the Investment Properties purchased with Phong's money and the Property Maintenance Investment transferred to Defendant Chiaravanond to repair and maintain the Investment Properties.

134. Phong is informed and believes and thereon alleges that Defendant Chiaravanond represented the Defalcation and Embezzlement Plan with the intent to defraud and induce Phong to transfer $15,455,000 to her and the Corporate Defendants control.

135. At the time Phong acted, he did not know that the representations were false and/or that material facts were omitted, and believed they were true and complete, and reasonably relied on them. Phong acted in justifiable reliance on the truth of the representations and in ignorance of material omissions made by Defendant Chiaravanond's Defalcation and Embezzlement Plan.

136. As a proximate result of Defendant Chiaravanond's misrepresentations and omissions, Phong has been deprived of the Investment Properties he purchased and the Property Maintenance Investment he transferred to Defendant Chiaravanond's control, in an amount no less than $15,455,000 plus 8% interest. Phong has also suffered substantial reliance

losses.

137. Defendant Chiaravanond's actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter Defendant Chiaravanond from engaging in conduct like that described herein.

138. Phong is entitled to the imposition of a constructive trust.

139. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

**COUNT VI**
**Fraud**
**(Defendant Chiaravanond)**

140. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

141. Defendant Chiaravanond knowingly made false representations to Phong that she wanted to help him create a retirement nest egg portfolio of profitable real estate so that if the two eventually married, those properties would provide the parties financial security. Because of Phong's relationship with Defendant Chiaravanond, he trusted and believed her representations.

142. Defendant Chiaravanond knowingly made these false representations to induce Phong to transfer money to Defendant so she could purchase the Investment Properties in LLCs under her exclusive ownership and control, in addition to cash to renovate and maintain the Investment Properties.

143. Defendant Chiaravanond's false representations were material, and Defendant intended that Phong would act thereon to transfer money to Defendant. Phong had a right to rely on the representations, and Phong's reliance on Defendant's representations was

reasonable and justified under the circumstances.

144. Defendant Chiaravanond knew or should have known that her representations were false when made, but Phong did not know that the representations were false when made.

145. As a result of Defendant Chiaravanond's fraudulent inducement, Phong has suffered consequent and proximate damages, including but not limited to, the value of all the Investment Properties, the $2,270,000 in cash Phong transferred to Defendant Chiaravanond, 8% interest, amounts of lost profits of the Investment Properties, and his incurred attorneys' fees and costs, all in amounts to be proven at trial.

146. Defendant Chiaravanond's actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter Defendant Chiaravanond from engaging in conduct like that described herein.

147. Phong is entitled to the imposition of a constructive trust.

148. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

## COUNT VII
## Negligent Misrepresentation
## (Defendant Chiaravanond)

149. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

150. Defendant Chiaravanond's Defalcation and Embezzlement Plan provided false information to Phong in a business transaction.

151. Defendant Chiaravanond intended for Phong to rely on the incorrect information in the Defalcation and Embezzlement Plan or knew that Phong would reasonably rely on that incorrect information.

152. Defendant Chiaravanond failed to exercise reasonable care in obtaining or communicating the information in the Defalcation and Embezzlement Plan.

153. At the time Phong acted, he did not know that the representations were false and/or that material facts were omitted, and believed they were true and complete, and justifiably and reasonably relied on them.

154. As a result of Defendant Chiaravanond's material negligent misrepresentations, Phong has suffered damages of no less than $15,455,000 plus 8% interest, attorneys' fees and costs, all in amounts to be proven at trial.

155. Defendant Chiaravanond's actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter Defendant Chiaravanond from engaging in conduct like that described herein.

156. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

**COUNT VIII**
**Aggravated Negligence and Negligence *Per Se***
**(Defendant Chiaravanond)**

157. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

158. Defendant engaged in unlawful, willful, and wanton activity for the purpose of financial gain, including but not limited to the Defalcation and Embezzlement Plan.

159. Defendant perpetrated the Defalcation and Embezzlement Plan, which constituted the commission of a class 2 felony for theft under ARS § 13-1802, and which is a crime punishable by imprisonment for more than one year.

160. Defendant's violations of ARS §§ 13-1802 constitutes negligence *per se* and

aggravated negligence.

161. Defendant perpetrated the Defalcation and Embezzlement Plan with reckless indifference to the results or the rights and safety of Phong.

162. Phong has suffered significant damage in an amount to be proven at trial, but no less than $15,455,000, as the direct, proximate, and reasonably foreseeable result of Defendant's unlawful, willful, and wanton activity, including but not limited to the Defalcation and Embezzlement Plan.

163. Defendant Chiaravanond's actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter Defendant Chiaravanond from engaging in conduct like that described herein.

164. In order to prevent injustice, Phong requests the Court pierce the corporate veil of the Corporate Defendants and hold Defendant Chiaravanond personally liable for their acts and omissions because she, in her capacity as sole member and manager of those entities, had personal knowledge of and ultimate authority to authorize their unlawful withholding of the Investment Properties and Property Maintenance Investment from Phong.

**COUNT IX**
**Conversion**
**(All Defendants)**

165. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

166. Phong rightfully owns the Property Maintenance Investment he transferred to Defendant Chiaravanond.

167. Through the Defalcation and Embezzlement Plan, Defendants have intentionally exercised dominion and control over the Property Maintenance Investment.

168. Through the Defalcation and Embezzlement Plan, Defendants have intentionally exercised dominion and control over Phong's transfer of the Property Maintenance Investment.

As a result of Defendants' intentional misconduct, Phong is entitled to punitive damages in an amount sufficient to deter Defendants from engaging in conduct like that described herein.

**COUNT X**
**(Aiding and Abetting)**
**(Corporate Defendants)**

169. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

170. As alleged herein, Defendant Chiaravanond engaged in tortious conduct for which she is liable to Phong.

171. Each Corporate Defendant knew and understood that Defendant Chiaravanond's acts to divert and withhold the Investment Properties and Property Maintenance Investment from Phong were unlawful.

172. Each Corporate Defendant substantially assisted and/or encouraged Defendant Chiaravanond in breaching her duties owed to Phong.

173. Each Corporate Defendant's aiding and abetting were each a proximate cause of Defendant Chiaravanond's unlawful, willful, and wanton conduct, including but not limited to the Defalcation and Embezzlement Plan.

174. Because of each Defendant's tortious conduct, Phong has suffered significant damage in an amount to be proven at trial, but no less than $15,455,000.

175. The Corporate Defendants' actions were and are willful, malicious, spiteful, deceitful, wanton, reckless, and carried out with an evil mind entitling Phong to an award of punitive damages sufficient to deter each Corporate Defendant from engaging in conduct like that described herein.

/ / /

/ / /

**COUNT XI**
**Resulting Trust**
**(All Defendants)**

176. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

177. Defendant Chiaravanond wrongfully induced Phong to transfer the Investment Properties and the Property Maintenance Investment to Defendant Chiaravanond.

178. Phong paid the entire purchase price for the Investment Properties.

179. Defendant Chiaravanond gave Phong no consideration, payment or compensation for the Investment Properties and the Property Maintenance Investment.

180. Phong, as holder of at least an equitable interest in the Investment Properties and the Property Maintenance Investment, has been damaged by Defendant Chiaravanond's continued inequitable holding of legal title to the Investment Properties and Property Maintenance Investment.

181. A resulting trust arises in favor of Phong for the Investment Properties and the Property Maintenance Investment, and title to the Investment Properties and the Property Maintenance Investment should immediately transfer to Phong.

**COUNT XII**
**Constructive Trust**
**(All Defendants)**

182. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

183. Defendant Chiaravanond wrongfully induced Phong to transfer the Investment Properties and the $2,270,000 in cash to Defendant Chiaravanond.

184. Phong paid the entire purchase price for the Investment Properties.

185. Defendant Chiaravanond gave Phong no consideration, payment or compensation for the Investment Properties and the Property Maintenance Investment.

186. Phong believed that transferring the Investment Properties and Property Maintenance Investment to Defendant was for the purpose of creating a retirement nest egg

for himself in the U.S.

187. Defendant Chiaravanond used her undue influence over Phong to convince him to convey the Investment Properties to LLCs Defendant Chiaravanond exclusively owns and controls and transfer to the Property Maintenance Investment Defendant Chiaravanond's bank account.

188. Phong holds at least an equitable interest in the Investment Properties and Property Maintenance Investment.

189. The circumstances under which Defendant Chiaravanond acquired the Investment Properties and Property Maintenance Investment from Phong and her refusal to return legal title of the Investment Properties and Property Maintenance Investment to Phong make it inequitable for Defendant Chiaravanond to retain legal title to the Investment Properties and Property Maintenance Investment.

190. Phong, as holder of at least an equitable interest in the Investment Properties and Property Maintenance Investment, has been damaged by Defendant Chiaravanond's continued inequitable holding of legal title to the Investment Properties and Property Maintenance Investment.

**COUNT XIII**
**Quiet Title**
**(Defendants Cathedral and Nido)**

191. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

192. Phong provided all the funds to purchase the Investment Properties, and Defendant Chiaravanond has provided no consideration to retain any ownership in the Investment Properties.

193. Phong claims all right, title, and interest in the Investment Properties.

194. At all relevant times, Phong has been the rightful owner of the Investment Properties and lawfully entitled to possession thereof.

195. Defendants each claim a right, equity, or interest in the Investment Properties,

as alleged herein.

196. Unless Defendants are enjoined from asserting their adverse claims to the Investment Properties, they will continue to assert their adverse claims resulting in irreparable harm, damage, and injury to Phong. Phong has no adequate legal remedy.

**COUNT XIV**
**Appointment of a Receiver**
**(Corporate Defendants)**

197. Phong realleges and incorporates by reference the allegations in the preceding paragraphs as though fully set forth herein.

198. Phong provided 100% of the financing for the Investment Properties and transferred the Property Maintenance Investment to Defendant Chiaravanond to renovate and maintain the Investment Properties.

199. On October 9, 2023, Defendant Chiaravanond listed the Malibu House and Malibu Land for sale for $7,809,000 without informing Phong or seeking his consent.

200. In connection with Defendant Chiaravanond's Petition to Nullify the Marriage, Defendant Chiaravanond is trying to keep the ownership of the Investment Properties and Property Maintenance Investment.

201. If the Defendants sell the Investment Properties or keeps those properties and keeps the Property Maintenance Investment, it will cause Phong irreparable harm.

202. As a result of Defendant Chiaravanond actions, Phong's rights in the Investment Properties and the Property Maintenance Investment should be preserved during the pendency of this proceeding to ensure Defendants do not wrongfully sell/transfer those assets.

203. Given that Defendant Chiaravanond is a dual Thai-U.S. Citizen, if she transfers funds to Thailand, Phong will never be able to recover them.

204. Pursuant to applicable law, including Federal Rule of Civil Procedure 66, 28 U.S.C. § 754, and A.R.S § 10-1431(C), the Court should appoint an individual or corporation to serve as receiver to take immediate control of the Corporate Defendants, the Investment Properties, the Property Maintenance Investment, and Defendants' bank accounts (the

"Subject Assets") to protect and preserve Phong's interest in those assets until this matter is resolved.

205. The Court should retain exclusive jurisdiction over the Subject Assets.

206. The Court should require the receiver post a *de minimi*s bond because the Defendants' imminent actions appear to be clearly unlawful, and Phong's interests require protection.

207. The receiver should exercise any and all powers over the Subject Assets as if she/he/it were a manager of the same.

208. The receiver is entitled to fair and reasonable compensation and expense reimbursement from the proceeds of the Investment Properties during the pendency of the proceeding.

209. Unless a receiver is appointed to manage the Subject Assets, Phong risks an imminent, substantial and unreasonable risk of irreparable financial harm to his interests which Defendants cannot adequately compensate him by money damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter Judgment in his favor and against Defendants, jointly and severally, as follows:

A. for actual, general, special, consequential, and punitive damages in an amount to be proven at trial; for pre- and post-judgment interest on any award of damages to the fullest extent permitted by law;

B. imposition of a resulting and constructive trust on Plaintiff's behalf;

C. to pierce the veil of all Corporate Defendants;

D. for an award of attorney fees and costs pursuant to A.R.S § 12-1103.

E. with regard to Count XII, as follows:

i. that the Court enter a judgment quieting title on Phong's behalf and granting all appropriate remedies permitted by the applicable quiet title statutes, A.R.S §12-1101 through §12-1104.

ii. that it be declared and adjudged that no Defendant has s any estate, interest, or encumbrance, real or in equity, in the Investment Properties currently titled in their names.

iii. that Defendants be barred and forever estopped from having or claiming any right or title to the Investment Properties currently titled in their names.

iv. that the Investment Properties currently titled in the names of Defendants be immediately transferred back to Phong.

v. that Phong exclusively has all right, title, and interest to the Investment Properties.

vi. that it be declared that Phong holds legal title to the Investment Properties currently titled in the names of Defendants as a constructive trustee or under a resulting trust in favor of Phong.

vii. for damages to be determined by the Court.

viii. that pursuant to A.R.S § 46-456(B) the Court award Phong actual damages to be determined by the Court plus two times the amount of the actual damages and reasonable costs and attorney fees.

that pursuant to A.R.S § 46-456(C) the Warranty Deeds of the subject Investment Properties be revoked in their respective entireties and title transferred back to Phong.

F. an injunction prohibiting Defendants from selling the Investment Properties, withholding any rent generated by the lease of the Investment Properties, and withholding the Property Maintenance Investment from Phong.

G. in the event judgment is obtained by default, for Plaintiffs' attorneys' fees of $25,000.00 pursuant to Rules 54 and/or 55(b)(1), *Federal Rules of Civil Procedure*, and for costs expended, plus interest on those sums, at the maximum rate permitted by law, from the date of Judgment until paid in full;

H. the continuing jurisdiction of this Court to review and determine the

reasonableness and award of any post-judgment costs and attorneys' fees sought by Plaintiffs, pursuant to Rule 54, *Federal Rules of Civil Procedure*; and, for such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 2nd day of December, 2023.

**MAY, POTENZA, BARAN & GILLESPIE, P.C.**

By /s/ *Devin Sreecharana*
Devin Sreecharana, Esq.

**ADMON LAW FIRM, PLLC**

Moshe Y. Admon

*Attorneys for Plaintiff*

# EXHIBIT 2

EXHIBIT 2

EXHIBIT 2

**WO**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

Phong Thanh Huynh,
Plaintiff,
v.
Alissa Chiaravanond, *et al.*,
Defendants.

No. CV-23-08622-PCT-JJT

**ORDER**

At issue is Plaintiff Phong Thanh Huynh's Emergency Motion for the Appointment of a Receivership Over Pacific Shangrila LLC and ILU LLC (Doc. 61), which Plaintiff requested the Court consider on an expedited and *ex parte* basis (Doc. 62). The Court held a telephonic hearing on the Motion on January 17, 2025, and Defendants did not appear at the hearing. (Doc. 68.)

Previously, counsel for Defendants withdrew from their representation of Defendants on December 20, 2024 with the approval of the Court (Docs. 56–59), and because Defendant Alissa Chiaravanond is the sole member and manager of the entity Defendants, the Court acknowledged that she may appear *pro se* on behalf of herself and the entity Defendants in this matter.[1] (Docs. 58, 59.) Since the withdrawal of Defendants' counsel, counsel for Plaintiff have attempted to contact Defendants using all known contact information, including regarding the ongoing discovery in this matter as well as the present Motion for the Appointment of a Receivership, and Defendants have not responded. (Docs.

[1] The Court ordered Ms. Chiaravanond to inform the Court by January 31, 2025, if she intends to go forward without counsel in this matter. (Docs. 58, 59.)

62, 64; Doc. 61-2, Decl. of Trevor J. Wainfield.) Indeed, counsel for Plaintiff report that Ms. Chiaravanond's counsel in her Singapore annulment proceedings was unable to make contact with her as of November 1, 2024, and that counsel was discharged from its representation of her and the annulment proceedings were dismissed. (Doc. 61-1, Decl. of Cyril Ting Shi Jie ¶ 4(a).) Nevertheless, this Court did not presume to resolve Plaintiff's present Motion on an *ex parte* basis and required Plaintiff to transmit notice of the Motion and hearing to Defendants using all known e-mail addresses on an expedited basis. Plaintiff did so (Doc. 66), and Defendants failed to respond to Plaintiff's Motion or appear at the hearing, thus waiving any argument in opposition to Plaintiff's Motion. *See, e.g.*, LRCiv 7.2(i).

Upon review of Plaintiff's Motion (Doc. 61) and considering the arguments made at the hearing, the Court finds as follows:

1. The Court has jurisdiction to adjudicate Plaintiff's request for appointment of a receivership over Pacific Shangrila LLC and ILU LLC.

2. The Court's appointment of a receiver is an "extraordinary equitable remedy" that "should be applied with caution." *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009). The "appointment of a receiver in equity is not a substantive right; rather, it is an ancillary remedy which does not affect the ultimate outcome of the action." *Id.* at 843 (quoting *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1291 (11th Cir. 1998)) (internal quotation marks omitted). Thus, where a federal court has diversity jurisdiction over a case, as here, Federal Rule of Civil Procedure 66 governs the appointment of a receiver, "even in the face of differing state law." *Id.* at 843 (quoting *Nat'l P'ship Inv. Corp.*, 153 F.3d at 1291) (internal quotation marks omitted).

3. Under Rule 66 and *Canada Life*, the Court considers a variety of factors—none of which is dispositive—in determining whether to exercise its discretion to grant a plaintiff's motion for the appointment of a receivership in a diversity action such as this one, including: (1) whether the plaintiff has a valid claim; (2) "whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant"; (3) "whether the

property is in imminent danger of being lost, concealed, injured, diminished in value, or squandered"; (4) "whether legal remedies are inadequate"; (5) whether the harm to the plaintiff by denial of the appointment would outweigh injury to the defendant; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to [the] plaintiff's interest in the property"; and (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership." *Id.* at 844 (quoting 13 James Wm. Moore, *et al.*, Moore's Fed. Practice § 66.04[2][b] (3d ed. 2008), and citing *N.Y. Life Ins. Co. v. Watt W. Inv. Corp.*, 755 F. Supp. 287, 292 (E.D. Cal. 1991)) (internal quotation marks omitted).

4. The "Palisades Fire" in and around Malibu, California that began on January 7, 2025, presents an immediate and critical danger to the real property that is the subject of this lawsuit and Plaintiff's Motion for the Appointment of a Receivership (Doc. 61), which property is located at (1) 20990 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu House") and (2) 20966 Las Flores Mesa Dr., Malibu, CA 90625 ("Malibu Land"). Defendant Pacific Shangrila LLC ("Pacific") holds title to the Malibu House and Defendant ILU LLC ("ILU") holds title to the Malibu Land. Considering the absence of Defendant Ms. Chiaravanond—the sole member and manager of both Pacific and ILU—and based on the evidence provided by Plaintiff, Defendants are not taking action to preserve these properties, enhancing the danger to the properties during this natural disaster.

5. Addressing the *Canada Life* factors and as Plaintiff demonstrates in the Motion for the Appointment of a Receivership (Doc. 61), Plaintiff has stated valid claims over the Malibu House and Land in the Complaint (Doc. 1). (*See* Doc. 55 at 6 n.2 (citing *Walters v. Fid. Mortg. of Cal.*, 730 F. Supp. 2d 1185, 1197–98 (E.D. Cal. 2010)).) Taking Plaintiff's allegations as true for the purpose of his unopposed Motion, there is at least a probability that Defendants defrauded Plaintiff. The objects of Plaintiff's request for the appointment of a receivership—the Malibu House through Defendant Pacific and the Malibu Land through Defendant ILU—are in peril and imminent danger of being lost or

diminished in value, particularly in light of the Palisades Fire presently burning property in the immediate area of the Malibu House and Land. Certain aspects of the damages Plaintiff may suffer are not compensable by money damages, including the potential loss of unique property and the enjoyment thereof, and in any case, relief may not be obtainable considering the disappearance of Ms. Chiaravanond. The balance of equities clearly tips in favor of appointment of a receivership to preserve the Malibu House and Land to the extent possible in the absence of any action on the part of Defendants. Likewise, in the absence of the appointment of a receivership, Plaintiff's interest in the property may be irreparably damaged, and a receivership has the immediate ability to protect Plaintiff's interest by preserving the Malibu House and Land to the extent possible. The *Canada Life* factors thus weigh in favor of appointment of a receivership.[2]

6. In the present circumstances, there is no other adequate remedy at law for the protection and preservation of the Malibu House and Malibu Land or the rights of the parties therein.

On the basis for the foregoing findings, considering the full record in this matter, and good cause appearing therefor,

**IT IS ORDERED** granting Plaintiff's Emergency Motion for the Appointment of a Receivership Over Pacific Shangrila LLC and ILU LLC (Doc. 61).

. . .

[2] Previously, in the briefing on Defendants' Motion to Expunge *Lis Pendens* on the Arizona properties (Doc. 50), the parties informed the Court that there is parallel litigation in California state court (Cal. Super. Ct. Case No. 23SMCV06061) brought by Plaintiff against Defendants Ms. Chiaravanond, Pacific and ILU. Plaintiff filed the California action three weeks after the present case. (*See* Doc. 50-6 at 4.) In the California action, Defendants moved to expunge *lis pendens* recorded by Plaintiff on the Malibu House and Land, and the California court granted the motion. (Doc. 50-6; Doc. 50-7 at 3.) At the hearing on Plaintiff's present Motion (Doc. 68), Plaintiff informed the Court that the California court subsequently stayed its action in deference to the present lawsuit in this Court.

In the present Motion, Plaintiff does not seek reinstatement of the *lis pendens* on the Malibu House and Land that were expunged by order of the California state court. Instead, Plaintiff seeks a receivership over Pacific and ILU to protect and preserve the property in light of the current natural disaster and Defendants' inaction. As such, and because the present action was filed before the California action, the Court declines to abstain under *Younger v. Harris*, 401 U.S. 37 (1971), in any deference to the related California action.

**IT IS FURTHER ORDERED** that counsel for Plaintiff shall electronically transmit a copy of this Order to Defendants at all known e-mail addresses within two days of the entry of this Order.

**IT IS FURTHER ORDERED** that Adam Nach of Peak Performance Restructuring Services, LLC ("Nach & PPRS" or "Receiver") is appointed as the receiver over the following companies:

(1) Pacific Shangrila LLC; and,

(2) ILU LLC

(hereinafter, the "Receivership Companies"). Adam Nach is not an employee or corporate officer of any party to this action, nor is Nach & PPRS otherwise interested in this action beyond its appointment as Receiver. The Receivership Companies and the assets held by the Receivership Companies shall hereinafter be referred to collectively as the Receivership Estate.

**IT IS FURTHER ORDERED** that Nach & PPRS is granted all the rights and powers available under 28 U.S.C. § 3103 and is also vested with all necessary powers, rights, and duties to operate, manage, and make all decisions of the Receivership Companies in a commercially reasonable manner, including, without limitation: commence and defend actions; take and keep possession of all Receivership Companies' property and assets, including, without limitation, payrolls, vehicles, licenses, inventory, equipment, intellectual property, real and personal property, legal and equitable claims, and banking and depository accounts (collectively referred to herein as "Property" or "Property of the Receivership Estate"); apply for insurance and licenses; receive revenue; collect debts; pay all just debts and other valid liabilities of the Receivership Companies; cease "off the books" transactions and remove any and all non-company related expenditures; contact and negotiate with the Receivership Companies' lenders, governmental regulators, and/or licensing agencies for the purpose of compromising or settling any claim or obligation of Receivership Companies; sign and endorse all checks

and contracts; withdraw and deposit monies; open bank accounts or other depository accounts; prepare any and all tax returns and related documents; make all management, operational, and financial decisions of the Receivership Companies; investigate any matter Nach & PPRS deems appropriate in connection with discovering additional information as it relates to the activities of the Receivership Companies; engage legal counsel on behalf of Receivership Companies; reorganize and/or properly structure the Receivership Companies' accounting and financial practices; and otherwise have the powers, rights, and duties necessary to carry out its duties as Receiver.

**IT IS FURTHER ORDERED** that the Receivership Companies, and any of their managers, officers, members, agents, partners, servants, employees and attorneys, and all other persons in active concert or participation with the Receivership Companies, or their managers, officers, agents, members, partners, servants, employees and attorneys, shall cooperate, in good faith, in providing the Receiver access to Property of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receivership Companies, and any of their managers, officers, members, agents, partners, servants, employees and attorneys, and all other persons in active concert or participation with the Receivership Companies, or their managers, officers, agents, members, partners, servants, employees and attorneys, shall preserve and deliver to the Receiver all of the records and property of the Receivership Companies, including without limitation,

1) All personal property, including all automobiles, equipment, accounts, accounts receivable, accounts payable, inventory, keys, bank accounts (both deposit and checking accounts), cash, receipts and income, expenses, records (including complete QuickBooks files), customer records, invoices, documents, leases, passwords and other material relating to the real properties owned by the Receivership Companies that are in their possession, custody or control, including, but not limited to, all accounting records, ledgers, journals, books and records,

computer data, user IDs, passwords and all materials and documents relating to the real properties owned by the Receivership Companies;

2) All income and transaction tax information, including tax id numbers, payment records, tax statements and communications for the two-year period prior to the entry of this Order;

3) All appraisals, surveys, tax assessments, photographs, and any and all other documents relating or pertaining to the value and condition of the real properties owned by the Receivership Companies;

4) All documents which constitute or pertain to insurance policies, whether currently in effect or lapsed, which relate to the real properties owned by the Receivership Companies;

5) All leases and subleases, side agreements, renewals, broker leasing agreements, royalty agreements, licenses, franchise agreements, licensing agreements, property management agreements, assignments or other agreements of any kind whatsoever, whether currently in effect or lapsed, which relate to any interests in the real properties owned by the Receivership Companies;

6) All documents pertaining to past, present or future construction of any type with respect to all or any part of the real properties owned by the Receivership Companies;

7) All documents of any kind pertaining to any and all toxic chemicals or hazardous materials, if any, ever brought, used and/or remaining upon the real properties owned by the Receivership Companies, including, without limitation, all reports, inventories, surveys, inspections, checklists, proposals, orders, citations, fines, warnings and notices; and

8) All rents and profits derived from the real properties owned by the Receivership Companies and all accounts, including bank accounts, operating accounts, security deposit accounts (including, without limitation, all security deposits, advances,

prepaid rents, late fees, and parking fees) wherever and in whatsoever mode maintained which relate to the real properties owned by the Receivership Companies.

**IT IS FURTHER ORDERED** that Nach & PPRS has authority to open accounts using the Receivership Companies' tax ID number(s), and utilize bank accounts for Receivership Estate funds; the Receiver shall be empowered to request financial institutions to freeze account(s) and request turnover of funds on deposit, which the Receiver has reason to believe is in possession of funds belonging to or arising from the operation of the Receivership Companies or are otherwise Property of the Receivership Estate. In the event the financial institution fails to freeze the subject account within 14 days of service of this Order, then the financial institution may be subject to sanctions by this Court. The Receiver may serve this Order on the financial institution by mail, email or personal service.

**IT IS FURTHER ORDERED** that Nach & PPRS has authority to terminate or wind down business operations and to sell, rent, lease, or otherwise dispose of assets of the Receivership Companies in the exercise of its reasonable business judgment, except for real properties, which it shall not sell or dispose of without further orders from this Court.

**IT IS FURTHER ORDERED** that Nach & PPRS may file amended articles of organization to make it a manager-managed limited liability company managed by Nach & PPRS and to remove any "Manager" or "President" (as the case may be) to show the new "Manager" or "President" of that entity is the Receiver.

**IT IS FURTHER ORDERED** that Nach & PPRS shall file monthly reports of Nach & PPRS's activities and accounting for the income and disbursements and proposed fees/expenses made by Nach & PPRS within twenty (20) days after the month's end, and a copy shall be served upon all parties appearing in this action. The Parties shall have fifteen (15) days after service of Nach & PPRS's report to file any objections thereto; failure to file an objection within such time shall be deemed an acceptance and approval of

the report and the payment of all fees and expenses set forth therein. No further application to, or order of the Court, will be necessary for the approval of the Receiver's fees and expenses, or those of the Receiver's professionals.

The monthly reports of Nach & PPRS's activities shall include identifying the steps taken by Nach & PPRS to implement the terms of this Order and to protect, preserve and prevent any diminution in the value of the Property of the Receivership Estate, including the real property, and raising any other matters that Nach & PPRS believes should be brought to the Court's attention.

**IT IS FURTHER ORDERED** that Nach & PPRS may charge for Nach & PPRS's services, which may include the services of the staff of Nach & PPRS. Nach & PPRS may charge for reimbursement of the costs and expenses for Nach & PPRS's services and for the interim fees of Nach & PPRS and the Nach & PPRS staff according to their standard hourly billing rates, which are:

| | |
|---|---|
| Adam Nach | $395/hr. |
| Director | $350/hr. |
| Associate/Manager: | $274/hr. |
| Support Staff | $95/hr. |
| Consultants | $300/hr. |

**IT IS FURTHER ORDERED** that PPRS may employ, hire, engage, and retain attorneys, certified public accountants, property managers, investigators, consultants, and any other personnel or employees at commercially reasonable rates (including affiliates), which the Nach & PPRS deems, in its business judgment, necessary to assist it in the discharge of its duties. Nach & PPRS is authorized to hire the law firm of Lane & Nach, P.C. Attorney Stuart B. Rodgers is qualified to assist Nach & PPRS in their duties in this matter. No further application to the Court is required as to the employment of Lane & Nach, P.C. Lane & Nach, P.C. may be reimbursed at their standard hourly billing rates, which are:

| | |
|---|---|
| Stuart B. Rodgers: | $450/hr. |
| Of Counsel and Partners: | $330-$420/hr. |
| Other associates: | $215-$335/hr. |
| Paralegals: | $50-$175/hr. |

**IT IS FURTHER ORDERED** that if the net revenues are insufficient to pay the ordinary, reasonable and necessary costs and expenses of the management and operation of the Receivership Estate, authorizing any of the parties, in their sole discretion, but without an obligation to do so, to advance to the Nach & PPRS sufficient funds to pay such ordinary, reasonable and necessary costs and expenses as any of the parties may elect to have paid (hereinafter, the "Receivership Advances"), reimbursable as receivership expenses, and further authorizing the Receiver to issue receivership certificate(s) to said party, at said party's request, reflecting the amount and priority of the Receivership Advances and to cause such receivership certificates to be recorded in the real property records, preserving any and all claims against the Property of the Receivership Estate and/or parties.

**IT IS FURTHER ORDERED** that upon the termination of the Receivership Estate, Nach & PPRS shall file with the Court a "Final Report and Accounting" or similar report, which sets forth any and all fees and expenses claimed by Nach & PPRS. The Final Report shall include a summary of Nach & PPRS's activities, including identifying the steps taken by Nach & PPRS to implement the terms of this Order and to protect, preserve and prevent any diminution in the value of the Property of the Receivership Estate, including the real property, and raising any other matters that Nach & PPRS believes should be brought to the Court's attention.

If no objection thereto is filed and served on or within ten (10) days following service thereof, such Final Report and Accounting may be paid, Nach & PPRS may be discharged. If an objection is timely filed and served, such Final Statement of Account shall not be paid absent further order of this Court. In the event objections are timely made

to such fees and expenses, those specific fees and expenses objected to will be paid within ten (10) days of an agreement among the parties or the entry of an order by this Court adjudicating the matter.

**IT IS FURTHER ORDERED** that upon termination of the Receivership, if there is a Court Order directing disposition of the funds held in the Receivership Estate, the Receiver shall disburse the funds pursuant to the Court Order. If there is no Court Order directing disposition of the funds held in the Receivership Estate, then the Receiver shall seek to deposit the funds in the Court Registry, or if the parties agree otherwise or the Court directs otherwise, into an escrow account for the benefit of the Trust and/or its beneficiaries.

**IT IS FURTHER ORDERED** that the Receiver is not authorized to list for sale or sell real properties of the Receivership Companies for sale without further order of this Court. The Receiver is authorized to remove any existing listings as of the date of this Order.

**IT IS FURTHER ORDERED** that any sale of Property shall be on an as/is where/is basis without any warranties or guarantees. Additionally, the Receiver may sell Property free and clear of liens and encumbrances, subject to further Court order. The Receiver is not authorized to list for sale or sell real properties of the Receivership Companies for sale without further order of this Court.

**IT IS FURTHER ORDERED** that Nach & PPRS may demand, collect, and receive all income, proceeds, revenues, receivables, rents, profits, or other amounts generated or derived from the real properties of the Receivership Companies. Such amounts will be utilized consistent with the provisions of this Order and otherwise held by the Receiver pending entry of an Order directing disbursement of the proceeds to the Parties.

**IT IS FURTHER ORDERED** that the Receivership Estate, the Receiver, and its employees, agents, attorneys and all professionals and management companies retained by

the Receiver shall have no liability for any employment benefits, obligations, or debts incurred by the parties to this action. The Receiver and its employees, agents, attorneys, and all professionals and management companies retained by the Receiver shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, without prior authority from this Court. In any event, no suit shall be maintained against the Receiver or its agents unless the Receiver has acted outside the scope of its authority and committed fraud or gross negligence in the administration of its duties. The Receiver is acting solely in its capacity as a receiver and the debts of the Receiver are solely the debts of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver and its staff, employees, agents, attorneys, and all others retained by the Receiver for the performance of the Receiver's duties hereunder shall have no liability for any obligations or debts incurred by or related to the parties in this proceeding, any Trust beneficiary, or the Receivership Estate. Unless based on willful, reckless, or intentional misconduct of the Receiver or its employees, agents, and consultants, all obligations and risks incurred by the Receiver and its consultants, agents, and employees in the discharge of its duties shall be obligations and risks solely to the Receivership Estate. The Receiver shall be and hereby is excused and exculpated from any and all personal liability, unless based on willful, reckless, or intentional misconduct of the Receiver or its employees, agents, and consultants; provided, however, that nothing in this paragraph shall in any way limit the liability of the surety for any obligations on the Receiver's Bond. The parties to this action and their affiliates, agents, employees, or others acting in concert with them, are forever barred from asserting any claims against the Receiver arising out of its conduct of the affairs of the Receivership Estate for actions taken in good faith and in the exercise of sound business judgment; the Receiver is performing a judicial function and serving in a judicial capacity. Nothing in this Order is intended to limit those protections provided under the law for receivers.

. . .

**IT IS FURTHER ORDERED** that the Receiver's liability for any action taken in the course of its duties shall be limited to the Receivership Estate. The Receivership Estate shall indemnify and hold harmless the Receiver, and any affiliate, member, officer or agent of the Receiver from any claims, liability, loss, cost or expense (including reasonable attorneys' fees and costs) arising out of this Receivership, unless the Receiver has acted outside the scope of its authority and committed fraud or gross negligence in the administration of its duties.

**IT IS FURTHER ORDERED** that the Receiver and its employees, agents, attorneys and all professionals and management companies retained by the Receiver shall have no liability for any obligations, or debts incurred, by the Receivership Companies. The Receiver and its employees, agents and attorneys shall have no personal liability, and they shall have no claim asserted against them relating to the Receiver's duties under this Order, without prior order from this court prior to the Receiver's taking possession of the Receivership Estate; provided, however, that the Receiver has the discretion to do so if the Receiver deems it in the best interest of the Receivership Estate. No utility or other vendor may terminate service or the provision of other goods or services to the Receivership Estate as a result of the non-payment of pre-receivership obligations, without prior order of this Court. The Receiver may, in the name of the Receivership Estate transfer any Receivership Companies' existing utility accounts to the name of the Receivership Estate; or open new utility accounts in the name of the Receivership Estate to provide services to Property of the Receivership Estate. The Receiver shall be entitled to utilize any of any Receivership Companies' utility deposits or transfer any utility deposits to the Receivership Estate. No third party is authorized to combine the accounts of this Receivership Estate with the accounts of any other Receivership Estate in which this Receiver is appointed. The Receivership Estate shall not be responsible for payment of any utility bills, unpaid payroll expenses, or other unpaid invoices for services or utilities incurred by, or for the benefit of, the Receivership Companies or any beneficiary prior to the Receiver's taking possession

of any Property of the Receivership Estate; provided, however, that the Receiver has the discretion to do so if the Receiver deems it in the best interest of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver shall not be responsible for filing reports pursuant to the Corporate Transparency Act or Beneficial Ownership Information Reports on behalf of the Receivership Companies. The Receiver shall not be responsible for filing tax returns on behalf of the Receivership Companies.

**IT IS FURTHER ORDERED** that the Receiver may record this Order with the applicable County Recorder(s).

**IT IS FURTHER ORDERED** that in the event any party violates the terms of this Order, the Receiver may petition this Court to issue an Order to Show Cause why such party should not be found to be in contempt and impose appropriate sanctions and penalties, which may include, but are not limited to, an award of Receiver's Fees and Costs pertaining to the violation, the Receiver's reasonable Attorney's Fees and Costs incurred, and compensatory/punitive damages.

**IT IS FURTHER ORDERED** that Nach & PPRS shall be empowered to commence an ancillary Receivership proceeding in another State or County in Arizona to administer Property of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver is authorized to communicate with all such persons as it deems appropriate to inform them of the status of this matter and the financial condition of the Receivership Companies.

**IT IS FURTHER ORDERED** that Receivership Companies and their current or former managers, officers, directors, members, employees, partners, trustees, agents, and representatives, including Alissa Chiaravanond, shall cooperate with the Receiver in the transition of the management of the Receivership Companies and performance of the duties and responsibilities of the Receiver by making themselves reasonably available to assist the Receiver as requested and shall make immediately available for turnover to the Receiver, if requested, all of their records, passwords, access codes, pin numbers, keys,

and alarm codes concerning the Receivership Companies and its accounts, computers, and property.

**IT IS FURTHER ORDERED** that the Receiver is empowered to enlist law enforcement for the protection of the Property of the Receivership Estate or to enforce an order of this Court, including to remove a party from the Property of the Receivership Estate or restraining a party's return to the Property of the Receivership Estate.

**IT IS FURTHER ORDERED** that the Receiver or any party to this action may, at any time, on proper notice, apply to this Court for further or other instructions, and for additional powers necessary to enable the Receiver to properly fulfill the Receiver's duties; and that except for good cause shown necessitating shorter notice, three (3) business days' prior notice shall be considered proper notice under this Order and such notice may be personally served, sent by pre-paid registered or certified U.S. mail, or given in any manner allowed under the Federal Rules of Civil Procedure governing civil actions generally.

**IT IS FURTHER ORDERED** that the parties to this action shall be entitled to have access to, and make copies of, documents in the Receiver's possession at their own expense during normal business hours. The Receiver shall retain all books and records for a period of time not to exceed sixty (60) days from the discharge of the Receiver, at which time the Receiver may destroy all such records without further application to the Court.

**IT IS FURTHER ORDERED** that Nach & PPRS shall promptly notify the Court of any failure or apparent failure of any person to comply in any way with the terms of this Order.

**IT IS FURTHER ORDERED** that Nach & PPRS shall remain appointed as the Receiver over the Receivership Companies until further order of the Court.

**IT IS FINALLY ORDERED** that the Court shall retain jurisdiction over the Receivership Companies and the other parties hereto for the purpose of enforcing the terms

of this Order and ordering such other relief upon proper showing as is consistent with this Order.

Dated this 17th day of January, 2025.

Honorable John J. Tuchi
United States District Judge